**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| **CORNELL PUMP COMPANY**, | ) | CASE NO.6:17-cv-847-Orl-41-TBS |
| | ) | |
| Plaintiff, | ) | Judge Carlos E. Mendoza |
| vs. | ) | |
| | ) | Magistrate Judge Thomas B. Smith |
| | ) | |
| **THOMPSON PUMP AND** | ) | |
| **MANUFACTURING COMPANY, INC.,** | ) | |
| **et al.** | ) | |
| | ) | |
| Defendants. | ) | |

**CORNELL'S MOTION TO COMPEL DEFENDANT THOMPSON PUMP**
**TO PROVIDE COMPLETE RESPONSES TO DISCOVERY REQUESTS**
**AND TO PRODUCE RESPONSIVE DOCUMENTS**

Plaintiff Cornell Pump Company ("Cornell") moves, pursuant to Federal Rule of Civil Procedure 37 and Local Rule 3.04(a), for an Order compelling Defendant Thompson Pump and Manufacturing Company ("Thompson") to provide complete responses to Cornell's First Set of Interrogatories ("Interrogatories") and to Cornell's First Set of Requests to Produce Documents ("Requests") (collectively, the "Discovery Requests"), and to produce responsive documents. In support of its motion, Cornell states as follows:

## I. Introduction

This Court should compel Thompson to provide complete responses to Cornell's Discovery Requests and to produce responsive documents, because: (1) Thompson's responses to Cornell's Discovery Requests are evasive, incomplete, and overloaded with groundless boilerplate and other objections; (2) Thompson has improperly used the ***absence*** of a "confidentiality agreement" as a principal basis for its non-production and non-responsiveness, when Cornell submitted an appropriate agreement more than three months ago (on August 21), and Cornell remains willing to enter into that agreement (even as amended to include several changes requested by Defendants); and (3) despite Cornell's good faith attempts to resolve this

1

discovery dispute without Court involvement, Thompson has not provided full and complete responses to Cornell's Discovery Requests and has failed to produce responsive documents.

## II. Procedural Background

This case has been pending since May 11, 2017, when Cornell filed its Complaint alleging claims against Defendant Thompson and its commonly-owned and -managed co-Defendant Precision Pump Parts, Inc. ("Precision"), for trade dress infringement under the Lanham Act (15 U.S.C. § 1125(a)(1)), and other claims.[1] (ECF 1 (PageID 1-23).)

In July 2017, Defendants filed motions to dismiss under Fed. R. Civ. P. 12(b)(6). (ECF 27, 28, Motions (PageID 123, 143).) Precision also sought, in the alternative, a more definite statement under Rule 12(e). (ECF 27, Motion at 1 (PageID 123).)  On August 2, 2017, Cornell filed its consolidated memorandum in opposition to Defendants' motions to dismiss and/or for more definite statement. (ECF 33, Opposition (PageID 185).) As of the date of this instant motion to compel (December 6, 2017), the Defendants' motions to dismiss and/or for more definite statement are still pending before the Court.

On September 12, 2017, Cornell served its first set of Discovery Requests to each of the Defendants. (A copy of Cornell's Discovery Requests to Defendant Thompson is appended hereto as Exhibit 1.)   Defendants have not sought, and have not been granted, a stay of discovery during the pendency of their motions to dismiss.

Even before serving discovery, and because the parties had agreed during their planning meeting that a confidentiality agreement would facilitate discovery in the case (ECF 32, Case Management Report at 8 (PageID 182)), Cornell on *August 21, 2017*, emailed a proposed Confidentiality Agreement to counsel for the Defendants. The proposed agreement is 14 pages,

---

[1] The defendants' discovery responses, as deficient as they are, do nonetheless provide support for Cornell's claim that Thompson and Precision have some common ownership, management, and control.

2

and includes two levels of confidentiality: (1) for "Confidential Information"; and (2) for

"Attorney Eyes Only Information." (A copy is appended hereto as Exhibit 2.)

For more than 45 days, neither of the Defendants responded *at all* to the proposed

Confidentiality Agreement. On October 5, 2017, the undersigned emailed both counsel to inquire

about the status. Only then did Defendants respond, by email and telephone on October 6 and 10,

2017, and still there was no feedback about the Confidentiality Agreement: instead, they each

wanted another month to respond to Cornell's Discovery Requests, until November 13, 2017.

Cornell agreed to the requested extension until November 13, subject to agreement of both

Defendants' counsel that they would diligently work with Cornell to complete the

Confidentiality Agreement by October 30, 2017, and that they would join in a motion to extend,

until November 30, 2017, the deadline for amending the pleadings.

Despite these assurances of diligent efforts to complete the agreement by October 30, that

has not happened. Defendants' counsel proposed several changes to the agreement, most of

which Cornell remains willing to accept. (A copy of the "Confidentiality Agreement," which

includes all changes on which the parties agree, is appended hereto as Exhibit 3.) But other

changes demanded by Defendants were unreasonable and unacceptable, including those changes

which: (1) sought to wholly exclude Cornell's inside counsel—the in-house attorney, with

Cornell's parent company, who is responsible for managing this litigation—from having any

access to Defendants' produced documents or other discovery information which Defendants

designate as either "Confidential Information" or "Attorney Eyes Only Information"; (2)

illogically placed the burden on the party, who sought to disclose to a potential expert the other

parties' designated "Confidential Information" or "Attorney Eyes Only Information," to move

the Court to permit the disclosure in circumstances where the producing party has objected to

that requested disclosure (whereas Cornell believes the producing party should, in all events, be

required to file such a motion, because *it* is the party objecting to the disclosure and is thus the only party equipped to outline for the Court the grounds for its objection); and (3) allowed Defendants to simply "redact" responsive information from a document whenever Defendants deemed the information to be irrelevant or "confidential," despite the agreement's very purpose, via its provision of two levels of confidentiality protection, to enable the production and disclosure of *precisely* such allegedly "confidential" information.

Cornell has endeavored in good faith to reach agreement on the Confidentiality Agreement. But, based upon Defendants' counsels' unreasonable demands—and as confirmed by both Defendants' heavily objection-laden, evasive, and non-responsive responses to the Discovery Requests—Defendants have not shared that approach. On November 10, 2017, the undersigned emailed defense counsel a summary of the negotiations to date on the Confidentiality Agreement, and requested that the parties immediately engage in further discussions to seek to resolve the outstanding issues. (A copy of the email of November 10, 2017, is appended hereto as Exhibit 4.) As of the date of this filing, neither Defendants' counsel has responded to that email, including Cornell's suggestion that, if the parties were unable to promptly resolve the matter themselves, it should be submitted to the Magistrate Judge for prompt resolution.

Having failed to reach agreement on the Confidentiality Agreement, Defendants on November 13, 2017, served their respective written responses to Cornell's Discovery Requests. Consistent with their approach on the Confidentiality Agreement, the Defendants' respective responses to the Discovery Requests are characterized by evasion and non-responsiveness. This motion addresses *Thompson's* deficient responses, and they are appended hereto as Exhibit 5 (Responses to Interrogatories) and Exhibit 6 (Responses to Document Requests). Thompson's responses are evasive, incomplete, and overloaded with groundless boilerplate and other

objections. And, having failed to achieve a negotiated confidentiality agreement, and without having sought or secured a protective order, Thompson is improperly relying upon the ***absence*** of an "agreement" to excuse its utter failure to produce virtually any of the documents Cornell has requested. Indeed, Thompson's "production" contains a mere 109 pages, many of them Cornell's own product catalogs and other publicly-available records.[2]

Promptly after receiving Thompson's evasive Discovery Responses, Cornell served a discovery dispute letter seeking a good faith resolution of its concerns over Thompson's deficient answers and responses. (A copy of Cornell's letter of November 24, 2017 is appended hereto as Exhibit 7.) Cornell sent a similar letter to Precision. Cornell's counsel requested that the parties have a conference on November 27, 28 or 29 to discuss the issues raised, and further indicated that Cornell would file a motion to compel as early as November 30. Both defendants' counsel disregarded Cornell's request for a conference on the dates indicated, and did not respond to the discovery letters. On November 30, Cornell's counsel telephoned both counsel's offices to make another request for a phone conference to address the deficient responses and seek good faith resolution. This effort resulted in a phone call being scheduled for December 5.

During the discovery call on December 5, Thompson's counsel reiterated the objections and declined to withdraw any of them, declaring, *ipse dixit*, that Cornell's discovery is a burdensome "fishing expedition" with no reasonable basis. The only disputed issue on which the parties reached agreement is that Thompson consented to provide a privilege log of documents withheld on the basis of privilege. (Thompson's counsel represented that the volume of such withheld documents is less than 20 documents.) Thompson's counsel told Cornell's counsel to

---

[2] Cornell reserves the right to file a similar motion to compel against Precision, whose responses to the Discovery Requests are also overloaded with the same or similar objections, and who has likewise failed to produce any responsive documents (other than documents that are publicly-available such as Cornell's own product catalogs).

file the motion to compel because resolution of the disputed discovery issues, without the Court's involvement, would not be forthcoming from Thompson.

Cornell has been more than patient in awaiting reasonable and fair discovery without involving the Court. Unfortunately, Thompson's (and Precision's) evasive tactics and stubborn non-responsiveness leave Cornell no choice but to file the instant motion.

### III. Legal Argument

**A. Thompson's Objections are Groundless.**

The Local Rules require a motion to compel to "include quotation in full of each interrogatory [and] request for production to which the motion is addressed; each of which shall be followed immediately by quotation in full of the objection and grounds therefor as stated by the opposing party; or the answer or response which is asserted to be insufficient, followed by a statement of the reason the motion should be granted." M.D. Fla. Local Rule 3.04(a). The Rules also impose a 25-page limit for motions.

Thompson has made many of the same groundless objections to most of Cornell's Discovery Requests, and some objections run on for a full page or longer. The 25-page limit for motions does not permit Cornell to submit a motion to compel that addresses all of Thompson's deficient responses. Therefore, Cornell is including in this motion a representative sampling of Discovery Requests which include Thompson's objectionable responses. Cornell respectfully requests that any ruling by the Court as to such Requests be made applicable to similar Requests, as noted herein, to which Thompson provided the same or similar objections and non-responses.

Before addressing the specific Discovery Requests whose responses are at issue, it is useful to note that Thompson's responses include eight (8) objections which appear ***repeatedly*** throughout its responses, either verbatim or in substantial respects. These are:

- <u>Objection 1</u>: Allegedly Confidential Information.

- <u>Objection 2</u>: Allegedly Excessive Time-Period.

- <u>Objection 3</u>: Allegedly Irrelevant and/or Non-Discoverable Sales/Customer Information.

- <u>Objection 4</u>: Allegedly Irrelevant or Vaguely-Defined Pumps or Replacement Parts.

- <u>Objection 5</u>: Replacement Parts Having No Claimed IP "Rights."

- <u>Objection 6</u>: Allegedly Irrelevant and/or Non-Discoverable Design Drawings, Etc.

- <u>Objection 7</u>: Purely Boilerplate Objections.

- <u>Objection 8</u>: Alleged Privileges.

One of these objections—No. 8, invoking attorney-client privilege or work product protection—has been preliminarily resolved, for the time being, by Thompson's willingness to provide a privilege log. The other seven remain unresolved. Accordingly, in this Section III(A), Cornell will first address each of Thompson's seven standard objections and why they are without merit. Then, in Section III(B), Cornell will address the representative sampling of Discovery Requests for which Thompson's responses are insufficient and contrary to the rules.

<u>**Objection 1: Allegedly Confidential Information.**</u>

Many of Thompson's responses include an objection in substantially the following form: "these documents, to the extent they exist, are protected trade secrets and subject to protection pursuant to Federal Rule of Civil Procedure 26(c)(1)(G). The Parties are negotiating an Agreement Among Parties Regarding Confidentiality to address these issues, and Thompson reserves the right to amend its Answer to this request in compliance with such an Agreement once executed." <u>See, e.g.</u>, Thompson Response to Interrog. Nos. 9, 11 (<u>Exhibit 5</u>); Thompson Response to Document Req. Nos. 5(b), 5(d), 6(b), 6(d), 7(b), 7(d), 8(b), 8(d), 10(a), 10(b), 10(d), 11(a), 11(b), 11(d), 12(a), 12(c), 13, 14, 15, 16, 17, 20, 26, 27, 28, 29, 30, 31, and 33 (<u>Exhibit 6</u>).

Indeed, it appears from Thompson's responses that it maintains that ***virtually all*** documents responsive to Cornell's discovery requests are "protected trade secrets" or otherwise "confidential," and will not be produced without an agreement among the parties concerning confidentiality. (Precision has taken the same position.)

Thompson cannot continue to hold discoverable information hostage to its own refusal to sign the proposed Confidentiality Agreement. Cornell has been more than reasonable in its efforts to address Defendants' overwrought concerns about alleged "confidential" information. Defendants are, by their conduct, obviously more interested in delaying any meaningful production to Cornell and in obstructing its discovery efforts, than in allowing this litigation to proceed under the Case Management Order.

Thompson's obstruction of Cornell's discovery efforts is in continuing defiance of the applicable discovery rules. See, e.g., Fed. R. Civ. P. 26(c); Polycarpe v. Seterus, Inc., 2017 U.S. Dist. LEXIS 77808, at *4 (M.D. Fla. May 23, 2017). The absence of a confidentiality agreement is not a legitimate excuse. Having refused to enter into a reasonable confidentiality agreement, Thompson was required to file a protective order to have the ability to withhold discoverable information requested by Cornell's Discovery Requests. It failed to do so.

### **Objection 2: Allegedly Excessive Time-Period.**

Cornell's Discovery Requests seek responsive information for the temporal period, defined as "the Subject Period," from January 1, 2010 to and including the date of Thompson's responses. Relying upon its assertion that the "statute of limitations" for Cornell's claims is only four years, Thompson claims the Subject Period is too long and should be limited to 4 years. Many of Thompson's responses thus include an objection in substantially the following form:

> Thompson objects to the definition of "Subject Period." This request seeks information from approximately the past eight years ("Subject Period" is defined as 1/1/2010 through present), but the statute of limitations prevents the Plaintiff from claiming infringement beyond the four-year period preceding the Complaint.

8

Plaintiff's Complaint appears to recognize this in limiting allegations to the past four years (see, for example ¶ 50). Given this limitation on Plaintiff's cause of action, information outside of the allowed time-frame is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims or defenses of any party to this action, nor reasonably calculated to lead to the discovery of admissible evidence.

See, e.g., Thompson Response to Interrog. Nos. 1, 2, 3, 4, 8, 9, 10, 11, 12, 13 (Exhibit 5);

Thompson Response to Document Req. Nos. 1, 2, 3, 4, 5(d), 6(d), 7(d), 8(d), 10(d), 11(d), 12(c),

15, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32 (Exhibit 6).

Thompson's objections on this basis are groundless. To begin with, even where a statute of limitations applies to a claim, that does not mean Defendants can block discovery under the Civil Rules for any of their documents and information that pre-dates the alleged limitations period. The statute of limitations of an underlying claim is not dispositive of the scope of admissible discovery related to that claim. See, e.g., Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 352 (1978) (discovery into "events that occurred before an applicable limitations period" is warranted where "the information sought is otherwise relevant to issues in the case"). It is well recognized that relevant and discoverable information may be remote in time from the events that actually precipitated the suit in question or which are within an applicable limitations period. See 6-26 Patrick E. Higginbotham, Moore's Fed. Prac. Civ. § 26.41 (2012).

Accordingly, federal courts routinely decline to tether discovery tightly to an alleged limitations period, and, instead, commonly permit discovery for "a reasonable number of years both prior to and following" an alleged liability period. Manning v. General Motors, 247 F.R.D. 646, 652-53 (D. Kan. 2007). See also Blair v. Prof'l Transp., Inc., 2015 U.S. Dist. LEXIS 10629, at *6-7 (S.D. Ind. Jan. 29, 2015). The three years preceding the alleged liability period, as sought by Cornell, is reasonable; there may even be instances in this case when going back further will be needed.

What's more, Cornell's claims in Counts 1 and 2 are brought under the Lanham Act. There is no statute of limitation for Lanham Act claims. See, e.g., AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1545-47 (11th Cir. 1986); ARES Def. Sys. v. Karras, 2016 U.S. Dist. LEXIS 51635, at *15 (M.D. Fla. Apr. 18, 2016). It is true that a four-year period is used in Florida "as a touchstone to demonstrate laches." Ares Def. Sys., 2016 U.S. Dist. LEXIS 51635, at *15. "This does not, however, mean that the Lanham Act has a four-year statute of limitations." Star-Brite Distrib., Inc. v. Gold Eagle Co., 2016 U.S. Dist. LEXIS 115655, at *2 (S.D. Fla. Jan. 22, 2016). Moreover, laches is an affirmative defense which **Defendants** would be required to plead and prove, if they intend to invoke it. Such a defense would only make further relevant the information sought by Cornell which predates that four-year period.

Finally, there is no reason to believe—and Thompson has not offered any evidence to demonstrate—that any materially greater burden is imposed upon Thompson by requiring it to provide such documents and information from January 1, 2010 to the present, as opposed to from May 2013 to the present. In neither event is there any undue burden. Indeed, some of the documents, in the measly 109 pages Thompson has so far produced, go back long before May 2013, and include emails and other documents from 2000, 2001, 2007, 2009, 2010, 2011, and 2012. Thompson is hard-pressed to claim that discovery may not reach back before May 2013, when Thompson has itself produced documents that predate May 2013.

Cornell is entitled to the discovery requested for the entire period going back at least the requested 7+ years, from January 2010 to the present.

### Objection 3: Allegedly Irrelevant and/or Non-Discoverable Sales/Customer Information.

Cornell's Discovery Requests seek information concerning the who, what, and where (including sales prices) of Thompson's sales/rentals, during the Subject Period, of its pumps and parts containing a bearing frame substantially similar to or comprising the alleged Cornell Trade

Dress. This includes Thompson's communications with customers and potential customers about the relevant pumps and parts. None of the requested information has been produced.

In addition to other objections noted herein, Thompson has objected to the production of requested sales/rental data and related sales/customer information on two grounds. First, some of Thompson's responses include the following objection, or an objection to similar effect: "Thompson objects to providing information regarding 'the customer, the date(s) of the sale(s), and the sales price(s)' as confidential, trade-secret, overly broad and unduly burdensome." Thompson Response to Interrog. Nos. 9, 11 (Exhibit 5); see also Thompson Response to Document Req. Nos. 1, 2, 5(d), 6(d), 7(d), 8(d), 10(d), 11(d), 12(c) (Exhibit 6). Second, Thompson is also evidently objecting to the production of any sales information which predates the May 2017 filing of Cornell's complaint: "Assuming arguendo that the Complaint provided actual notice of the alleged trade dress, there are no sales after service of the Complaint." See, e.g., Thompson Response to Interrog. No. 2 (Exhibit 5); Thompson Response to Document Req. Nos. 1, 2, 3 (Exhibit 6).

These objections are meritless, and all such requested sales/customer information should be provided for the entirety of the requested Subject Period, from January 1, 2010, to the present, and including such information for Thompson's rentals of such pumps and parts. The requested documents and information are relevant and proportional to numerous issues in this case, including:

> (1)   Whether the bearing frames in Thompson's pumps are confusingly similar to Cornell's alleged trade dress, as may be evidenced, for example, by what Thompson may be representing to customers in emails and other communications, and by what customers have been led to believe.

> (2)   Whether features of the claimed Cornell trade dress in the bearing frame are functional or non-functional, including such issues as whether allowing exclusive use to Cornell would put Thompson at a significant non-reputation-related disadvantage.

(3)   Whether Defendants' use of the alleged trade dress is allegedly necessitated by considerations of cost or quality.

(4)   Whether the alleged trade dress in the bearing frame has acquired a secondary meaning, including by evidence that the consuming public has come to recognize the Cornell design as one that distinguishes a pump product as uniquely that of Cornell, and Defendants' respective awareness of the existence of that acquired meaning, including because consumers have told them so.

(5)   Whether Defendants have engaged in intentional copying of the Cornell trade dress, the evidence of which would support the element of secondary meaning under applicable law.

(6)   Whether Defendants have sought to trade on the reputation of Cornell, as may be evidenced in, for example, Defendants' respective communications with their customers, the consuming public, and others in the industry, and between themselves as the alleged "manufacturer" (Thompson) and component-part "supplier" (Precision).

(7)   The extent of Cornell's damages and losses resulting from Defendants' alleged trade dress infringement and other acts of unfair competition.

The information is also relevant and proportional to Cornell's claims that Thompson is making and/or selling/renting other replacement parts and/or pumps—in addition to the bearing frame—which are also knock-offs of those of Cornell. In all instances, Thompson is alleged to have marketed and sold the products in such a way that consumers have been led to believe the pumps/parts had been made by, originated with, or approved by Cornell, when that is not true.

Thompson is also inexplicably suggesting an unwillingness to provide sales information **even within** the four-year discovery period it has selected, as demonstrated by its suggestion that it may restrict such discovery to only those periods *after* the alleged trade dress was "registered" or, even more audaciously, *after* Thompson received the Complaint. See Thompson Response to Interrog. No. 2 (Exhibit 5). There is no legal basis for either contention. Registration is not a requirement for a trade dress claim under the Lanham Act. The statute is unambiguous on that:

> In a civil action for trade dress infringement under this Act for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

15 U.S.C. § 1125(a)(3). Nor is there any legal basis for Thompson's contention that Cornell is only entitled to discovery of sales information for periods after the date Thompson is willing to concede it had received "actual notice of the alleged trade dress," i.e., allegedly with the service of the Complaint. Thompson has cited no law that allows it to restrict discovery in this way; none exists. Moreover, Thompson's objection in this respect ignores that Cornell's complaint specifically alleges that Cornell "has provided notice to Defendants that Cornell considers the Cornell Trade Dress to be the exclusive intellectual property of Cornell." (Complaint, ¶ 46.) If Thompson needs further information about such notice, and the ways in which it was provided, it can seek discovery on that topic from Cornell.

But Thompson is not permitted to dictate the scope of discovery based upon its own theories of the case, including its theories concerning "registration" and "notice." "**No party 'possess[es] the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case."** Sentis Group, Inc. v. Shell Oil Co., 763 F3d 919, 925 (8th Cir. 2014) (emphasis supplied). See also Liguria Foods, 320 F.R.D. at 183.

All sales and customer information that has been requested by Cornell, from January 2010 to the present, should be produced. This includes all sales/rental information concerning the bearing frame, which Thompson has identified as encompassing the period from September 17, 2009 to May 26, 2015. See, e.g., Thompson Response to Interrog. No. 2 (Exhibit 5). It also includes sales/rental information for any other responsive bearing frames, pumps, and replacement parts.

### Objection 4: Allegedly Irrelevant or Vaguely-Defined Pumps or Replacement Parts.

Thompson complains about "vagueness," or seeking a "legal conclusion," as to Cornell's request for discovery about bearing frames "whose design is the same, or substantially the same"

as the Cornell bearing frame depicted and referenced in the Complaint, or depicted in the photograph submitted with the discovery requests. <u>See</u> Thompson Response to Interrog. Nos. 8, 9, 10, 11, 12, 13 (<u>Exhibit 5</u>); Thompson Response to Doc. Req. Nos. 5 (<u>Exhibit 6</u>).

Then, Thompson hedges in its responses as to what it is willing to produce concerning the bearing frame design and trade dress at issue in the Complaint. Thompson's responses state that Thompson has purchased and sold "bearing frames having **functional similarity** to Exhibit A," and that it has assembled and sold five "models of centrifugal pumps which include a bearing frame having **functional similarity** to Exhibit A." <u>See</u> Thompson Response to Interrog. Nos. 1, 2, 8, 9, 10, 11 (<u>Exhibit 5</u>); Thompson Response to Doc. Req. Nos. 1, 2, 3, 5, 25 (<u>Exhibit 6</u>).

These objections are unfounded. And the purported limitation of Thompson's responses to "functional similarity to Exhibit A" should be clarified and/or withdrawn.

Cornell is entitled to discovery about any bearing frame which, during the Subject Period, is or was designed, manufactured, purchased, and/or sold/rented by Thompson, and which is the same or substantially the same as the bearing frame comprised of the alleged trade dress at issue in the Complaint. This certainly includes the five pump models identified by Thompson: (1) 4x4s3/03, (2) 6x6s1/01, (3) 10x8s1/01, (4) 12x12s1/01, and (5) 16x16s1/01.

In seeking to clarify what is requested, Cornell's Discovery Requests reference the Complaint's Exhibit A, and the narrative description of the subject trade dress in the Complaint at paragraph 18. The term "Cornell Trade Dress" in the Discovery Requests is intentionally broad,[3] and the specific requests seek to capture any bearing frames that are the same or substantially the same as that depicted and described: <u>e.g.</u>, "same, or substantially the same, as the bearing frame depicted in the photograph in paragraph 36 of the Complaint"; "same, or

---

[3] The term "Cornell Trade Dress" is defined in the Discovery Requests as "the design and configuration of Cornell's bearing frame as referenced and/or depicted by Cornell in paragraph 18 of the Complaint and in Exhibit A attached to the Complaint." (Exhibit 1 at p. 2.)

substantially the same, as the Cornell Trade Dress"; "same, or substantially the same, as those used by Cornell." (Exhibit 1 at pp. 8-10, 13-14.) This is sufficient information for Thompson to understand the scope of what has been requested.

The determination of whether a particular bearing frame is, **for discovery purposes**, the same or substantially the same in design or appearance, does not require a legal conclusion, as Thompson suggests. Nor is the request "vague." Rather, it necessitates a practical and common-sense comparison, fully consistent with the proportionality requirements of the Civil Rules. If Thompson has any questions about whether a particular bearing frame (or completed pump assembly containing such bearing frame) is within the scope of Cornell's Discovery Requests, it can simply ask Cornell's counsel.

Cornell is also entitled to the requested discovery, concerning bearing frames that are the same or substantially the same as the Cornell Trade Dress and/or the photographs in the Complaint, **regardless** of whether Thompson concedes or believes that they are "functionally similar" to those of Cornell or not. To the extent Thompson is utilizing "functional similarity" to exclude from production information about other bearing frames which, although perhaps not "functionally" similar, are nevertheless the same or substantially the same in design and/or appearance to the Cornell Trade Dress, then the responses are inadequate and non-responsive in significant respects. Indeed, given the importance of the issue of **functional vs. non-functional** to the existence of a trade dress, Thompson's responses would, in that event, be another example of Thompson unilaterally imposing its own theory of the case to restrict Cornell's discovery.

## Objection 5: Replacement Parts Having No Claimed IP Rights.

Separate from the bearing frame allegedly comprising the Cornell Trade Dress, Cornell has requested discovery concerning Defendants' alleged copying and misrepresentations concerning other Replacement Parts—with that term defined to mean "replacement parts for

Pumps, and including bearing frames, impellers, back-plates, brackets, volutes, suction covers, shaft sleeves, wear rings, shafts, and other components" (Exhibit 1 at p. 3)—where their design is the same, or substantially the same, as those of Cornell. These Discovery Requests are relevant and proportional to Cornell's claims in its Complaint that Thompson and its commonly-owned and -managed co-defendant have jointly been involved in passing off, reverse passing off, and other acts of unfair competition against Cornell with respect to such replacement parts.

Thompson has objected to producing any documents or other information about Defendants' alleged copying and misrepresentations concerning such replacement parts, other than bearing frames, because, according to Thompson, Cornell has not alleged any "intellectual property rights" or "intellectual property protection" for any such replacement parts (other than the bearing frame), and that the requested information is thus "neither relevant nor proportional to the claims or defense in this case." See, e.g., Thompson Response to Interrog. Nos. 1, 2, 3, 12, 13 (Exhibit 5); Thompson Response to Document Req. Nos. 1, 2, 3, 4, 8, 12, 14, 15, 20, 26, 28, 29, 31, 32 (Exhibit 6). Thompson's objection also alleges that "[t]his over-reaching is one of the subjects of Thompson's pending motion to Dismiss." See, e.g., Thompson Response to Interrog. No. 1 (Exhibit 5).

These objections have no merit, because they ignore the allegations of the Complaint and the relevant law. Regardless of whether Cornell, in any such Replacement Parts, has or claims any alleged "trade dress" or other claimed "intellectual property" rights or protections, it nevertheless constitutes actionable unfair competition and/or violates the Lanham Act for Thompson to engage in conduct that causes consumers to believe such Replacement Parts were made, endorsed, or approved by Cornell, when they were not. That is in part Cornell's allegation.

Just as Thompson may not restrict discovery by insisting upon its own theory of the case, so too may it not presume that its motion to dismiss will be granted. Cornell opposed the motion

to dismiss, and no stay of discovery has been sought or obtained by Thompson or entered by the Court. Cornell is entitled to the discovery sought.

### Objection 6: Allegedly Irrelevant and/or Non-Discoverable Design Drawings, Etc.

Thompson has objected to producing, for the subject discoverable bearing frames and other replacement parts, the applicable design drawings, product testing results (such as performance curves), and inventory information. In addition to some of the other groundless objections already addressed above, Thompson claims that such information is "not relevant to the claims or defenses of any party in this litigation." Thompson Response to Document Req. Nos. 5(b), 6(b), 7(b), 8(b), 10(a), 10(b), 11(a), 11 (b), 12(a), 13, 14 (Exhibit 6).

These documents and materials are relevant to Cornell's claims, including some of the substantive issues identified earlier, including, but not limited to, intentional copying.

### Objection 7: Boilerplate Objections.

Thompson's discovery responses also include numerous improper boilerplate, generalized objections, such as: "Thompson objects to this Interrogatory as overly broad, unduly burdensome, and seeking information that is neither relevant to the claims or defenses of any party to this action, nor reasonably calculated to lead to the discovery of admissible evidence." See Thompson Response to Interrog. No. 1 (Exhibit 5). See also Thompson Response to Interrog. Nos. 2, 3, 4, 8, 9, 10, 11, 12, 13 (Exhibit 5); Thompson Response to Doc. Req. Nos. 1, 2, 3, 4, 5, 6, 7, 8, 15, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32 (Exhibit 6).

The "'generalized objections are inadequate and tantamount to not making any objection at all.'" Polycarpe, 2017 U.S. Dist. LEXIS 77808, at *4 (citing Liguria Foods). Also deficient are the numerous responses Thompson seeks to make "subject to" its many boilerplate objections. "Responding to discovery 'subject to,' or 'notwithstanding' objections 'preserves nothing and wastes the time and resources of the parties and the court.'" Polycarpe, at *10-11.

17

**B. The Court Should Order Full and Complete Responses to the Following Representative Discovery Requests, and Should Order Thompson to Produce All Responsive Documents.**

Thompson's responses to the following representative Discovery Requests are insufficient under the applicable rules. The seven unresolved standard objections are groundless. Thompson's continued refusal to produce nearly all responsive documents is improper and obstructionist.

Cornell reproduces below the complete subject requests and Thompson's verbatim responses. For ease of presentation, Cornell has annotated Thompson's responses **(in bold red type and with text boxes)** to highlight where each of the standard objections appears in the verbatim response. Finally, at the end of each of the subject Discovery Requests, Cornell summarizes the relief it is requesting from this Court for that Request, and for the identified related Requests to which Thompson has made the same or similar objections.

> **1. <u>Document Request No. 5</u>: Documents and information concerning Thompson's sales of pumps or parts containing the alleged Cornell Trade Dress, and other parts allegedly copied or "knocked off" from Cornell. [These same deficiencies also apply to Thompson's Responses to Interrog. Nos. 8-11 and Req. Nos. 6-8, 10-12, and 15.]**

5. With respect to each version or model of Pump manufactured by Thompson which includes or has included a bearing frame whose design is the same, or substantially the same, as the bearing frame depicted in the photograph in paragraph 36 of the Complaint (a color copy of which is attached hereto as Exhibit 1), produce the following Documents concerning such Pumps: (a) the design drawings used or generated by Thompson for such Pumps; (b) product testing results or results of other methods/calculations used by Thompson to generate pump performance curves for such Pumps; (c) any marketing materials used or produced by Thompson for such Pumps; and (d) any sales data reflecting Thompson's sales of such Pumps during the Subject Period including names of customers, dates of sale, sales prices, and relevant commercial terms.

**ANSWERS:**

**[<u>Objection 7</u>: Boilerplate Objections]**

Thompson objects to this request as overly broad, unduly burdensome, and seeking information that is neither relevant to the claims or defenses of any party to this action, nor reasonably calculated to lead to the discovery of admissible evidence.

**Objection 4: Allegedly Irrelevant or Vaguely-Defined Pumps or Replacement Parts.]**

The request is not limited in time. Furthermore, the request is vague because it does not request information for specific versions or models of pumps, and the phrase "whose design is the same, or substantially the same" does not sufficiently define what degree of similarity is meant or what is meant by "design," and the phrase appears to call for a legal conclusion. In addition, this request seeks to inappropriately shift the burden of proof in this litigation to Thompson by asking Thompson to support Plaintiff's allegations in this lawsuit. Thompson denies that such products exist, or, if they do, that their existence is the result of the actions alleged in Plaintiff's Complaint. Thompson objects to this request because Thompson does not know the source or author of the photograph and cannot verify that the photograph shows what it purports to show.

Without waiving these objections, Thompson responds as follows:

(a) **[seeking design drawings]** None.

(b) **[seeking product testing data]** Objection.

**[Objection 6: Allegedly Irrelevant and/or Non-Discoverable Design Drawings.]**

This request is not reasonably calculated to lead to the discovery of admissible evidence because pump performance curves are not relevant to the claims or defenses of any party in this litigation.

**[Objection 1: Allegedly Confidential Information.]**

Furthermore, these documents, to the extent they exist, are protected trade secrets and subject to protection pursuant to Federal Rule of Civil Procedure 26(c)(1)(G). The Parties are negotiating an Agreement Among Parties Regarding Confidentiality to address these issues, and Thompson reserves the right to amend its Answer to this request in compliance with such an Agreement once executed.

(c) **[seeking marketing materials]** Thompson is producing responsive documents.

(d) **[seeking sales data and customer information]**
**[Objection 4: Allegedly Irrelevant Sales/Customer Info; Objection 7: Boilerplate Objections]**

Thompson objects to this request as overly broad, unduly burdensome, and seeking information that is neither relevant to the claims or defenses of any party to this action, nor reasonably calculated to lead to the discovery of admissible evidence.

**[Objection 2: Allegedly Excessive Time-Period.]**

Furthermore, Thompson objects to the definition of "Subject Period." This request seeks information from approximately the past eight years ("Subject Period" is defined as 1/1/2010 through present), but the statute of limitations prevents the Plaintiff from claiming infringement beyond the four-year period preceding the Complaint. Plaintiff's Complaint appears to recognize this in limiting allegations to the past four years (see, for example ¶ 50). Given this limitation on Plaintiff's cause of action, information outside of the allowed time-frame is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims or defenses of any party to this action, nor reasonably calculated to lead to the discovery of admissible evidence.

**[Objection 1: Allegedly Confidential Information.]**

Furthermore, these documents, to the extent they exist, are protected trade secrets and subject to protection pursuant to Federal Rule of Civil Procedure 26(c)(1)(G). The Parties are negotiating an Agreement Among Parties Regarding Confidentiality to address these issues, and Thompson reserves the right to amend its Answer to this request in compliance with such an Agreement once executed.

## Summary of Cornell's Position:

The standard objections are groundless as applied to this Request. The same or similar deficient responses, based on the same or similar objections, were also made by Thompson to Interrog. Nos. 8-11 (Exhibit 5), and Req. Nos. 6-8, 10-12, and 15 (Exhibit 6), which likewise seek production of information concerning Thompson's sales of pumps or parts containing the alleged Cornell Trade Dress, and other parts allegedly copied or "knocked off" from Cornell. Virtually no responsive information has been provided. The responses are incomplete and non-responsive.

Information about Thompson's sales of pumps or parts containing the alleged Cornell Trade Dress, and/or containing other parts allegedly copied from Cornell by Thompson (or Precision), is at the heart of the dispute in this case. The requested responsive documents should be produced. Thompson should be required to provide responsive documents for the entire Subject Period, including the requested sales/rental information for that same period, and including for the five pump models Thompson has identified: (1) 4x4s3/03, (2) 6x6s1/01, (3)

20

10x8s1/01, (4) 12x12s1/01, and (5) 16x16s1/01.

Thompson must not limit its production, as to bearing frames, to only those "having functional similarity to Exhibit A," but should respond for all such frames that are substantially the same in design or appearance as depicted and described in the Complaint. The production should also include responsive documents for those Replacement Parts known by Thompson to be produced by Cornell (including because Thompson or Precision copied or replicated those parts from Cornell, see Request Nos. 10-12), and regardless of whether Cornell has alleged any "intellectual property rights" in such parts.

Any alleged "confidential" or "trade secret" information may not be withheld by Thompson, and must be produced. However, at Thompson's election, such information may be produced subject to the version of the Confidentiality Agreement attached hereto as Exhibit 3.

> **2. Document Request Nos. 26: Thompson's internal and external communications about relevant matters. [These same deficiencies also apply to Thompson's Responses to Req. Nos. 16-17, 20-21, and 27-30].**

26. Any and all Communications between Thompson, on the one hand, and Precision, on the other, during the Subject Period, concerning any of the following topics or matters: (a) Cornell, (b) the Cornell Trade Dress, (c) Cornell Pumps, (d) Cornell Replacement Parts, (e) the Cornell Trademark Proceedings, and/or (f) this lawsuit and/or the allegations in Cornell's Complaint.
**ANSWERS:**

**[Objection 7: Boilerplate Objections.]**

Thompson objects to this request as overly broad because the phrase "any and all" seeks documents far beyond the scope of this litigation. Thompson also objects to this request as overly broad, unduly burdensome, and seeking information that is neither relevant to the claims or defenses of any party to this action, nor reasonably calculated to lead to the discovery of admissible evidence.

**[Objection 2: Allegedly Excessive Time-Period.]**

Furthermore, Thompson objects to the definition of "Subject Period." This request seeks information from approximately the past eight years ("Subject Period" is defined as 1/1/2010 through present), but the statute of limitations prevents the Plaintiff from claiming infringement beyond the four-year period preceding the Complaint. Plaintiff's Complaint appears to recognize this in limiting allegations to the past four years (see, for example ¶ 50). Given this limitation on Plaintiff's cause of action, information outside of the allowed time-frame is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims or defenses of any party to this action, nor reasonably calculated to lead to the discovery of admissible evidence.

**[Objection 8: Alleged Privileges]**

Furthermore, the requested documents are protected by the work product doctrine and the attorney-client privilege.

**[Objection 1: Allegedly Confidential Information.]**

Finally, these documents, to the extent they exist, are protected trade secrets and subject to protection pursuant to Federal Rule of Civil Procedure 26(c)(1)(G). The Parties are negotiating an Agreement Among Parties Regarding Confidentiality to address these issues, and Thompson reserves the right to amend its Answer to this request in compliance with such an Agreement once executed.

**Summary of Cornell's Position:**

The standard objections are groundless as applied to this Request. The same or similar deficient responses, based on the same or similar objections, were also made by Thompson to Req. Nos. 16-17, 20-21, and 27-30 (Exhibit 6), which likewise seek production of Thompson's internal and external communications about directly relevant matters. Virtually no responsive information has been provided.

The responses are incomplete and non-responsive. The requested internal and external communications by Thompson—including with its co-defendant Precision—about relevant matters, as sought in this and the other referenced Requests, is traditional, garden-variety discovery, and pertains to matters critically relevant to the case.

Thompson's communications with Precision are not "privileged" or otherwise protected from discovery. However, even if any might be, Thompson must identify them with sufficient

specificity on the privilege log it has said it will provide (and which it claims to include less than 20 withheld documents).

The requested responsive documents should be provided for the entire Subject Period. The production, as to bearing frames, should not be limited to only those "having functional similarity to Exhibit A," but should include responsive documents for all such frames that are substantially the same in design or appearance as depicted and described in the Complaint. The production should certainly include responsive documents for the five pump models Thompson has identified: (1) 4x4s3/03, (2) 6x6s1/01, (3) 10x8s1/01, (4) 12x12s1/01, and (5) 16x16s1/01. The production should also include responsive documents for those Replacement Parts known by Thompson to be produced by Cornell (including because Thompson or Precision copied or replicated those parts from Cornell, see Request Nos. 10-12), and regardless of whether Cornell has alleged any "intellectual property rights" in such parts.

Any alleged "confidential" or "trade secret" information may not be withheld by Thompson, and must be produced. However, at Thompson's election, such information may be produced subject to the version of the Confidentiality Agreement attached hereto as Exhibit 3.

**3. Document Request No. 31: Thompson's participation in efforts to copy, replicate or reproduce Cornell-made pumps or parts. [These same deficiencies also apply to Thompson's Response to Req. No. 32].**

31. Any and all Documents and Communications, during the Subject Period, concerning Thompson's participation in, or funding of, any effort to copy, replicate, or reproduce Cornell Pumps, Cornell Replacement Parts, and/or the Cornell Trade Dress.
**ANSWER:**

**[Objection 7: Boilerplate Objections]**

Thompson objects to this request as overly broad because the phrase "any and all" seeks documents far beyond the scope of this litigation. Thompson also objects to this request as overly broad, unduly burdensome, and seeking information that is neither relevant to the claims or defenses of any party to this action, nor reasonably calculated to lead to the discovery of admissible evidence.

**[Objection 2: Allegedly Excessive Time-Period.]**

Furthermore, Thompson objects to the definition of "Subject Period." This request seeks information from approximately the past eight years ("Subject Period" is defined as 1/1/2010 through present), but the statute of limitations prevents the Plaintiff from claiming infringement beyond the four-year period preceding the Complaint. Plaintiff's Complaint appears to recognize this in limiting allegations to the past four years (see, for example ¶ 50). Given this limitation on Plaintiff's cause of action, information outside of the allowed time-frame is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims or defenses of any party to this action, nor reasonably calculated to lead to the discovery of admissible evidence.

**[Objection 4:  Allegedly Irrelevant or Vaguely-Defined Pumps or Replacement Parts.]**

Thompson objects to this request to the extent it presupposes that the "design and configuration of Cornell's bearing frame as referenced and/or depicted by Cornell in paragraph 18 of the Complaint and in Exhibit A attached to the Complaint" qualifies as protected trade dress, which it does not.

**[Objection 6: Allegedly Irrelevant and/or Non-Discoverable Design Drawings.]**

Thompson further objects as this request is not reasonably calculated to lead to the discovery of admissible evidence because pump performance curves are not relevant to the claims or defenses of any party in this litigation.

**[Objection 1: Allegedly Confidential Information.]**

Furthermore, these documents, to the extent they exist, are protected trade secrets and subject to protection pursuant to Federal Rule of Civil Procedure 26(c)(1)(G). The Parties are negotiating an Agreement Among Parties Regarding Confidentiality to address these issues, and Thompson reserves the right to amend its Answer to this request in compliance with such an Agreement once executed.

**Summary of Cornell's Position:**

The standard objections are groundless as applied to this Request. The same or similar deficient responses, based on the same or similar objections, were also made by Thompson to Req. No. 32 (Exhibit 6), which likewise seeks production of documents and information concerning Thompson's participation in efforts to copy, replicate or reproduce Cornell-made pumps or parts. No responsive information has been provided.

Information about Thompson's efforts to copy, replicate, or reproduce Cornell-made pumps and parts, and meetings about same, goes to the essence of the dispute in this case.

Thompson should be required to provide responsive documents for the entire Subject Period. Its production should include responsive documents for the bearing frames alleged to have been misappropriated from Cornell, including those bearing frames featured in the five pump models Thompson has identified: (1) 4x4s3/03, (2) 6x6s1/01, (3) 10x8s1/01, (4) 12x12s1/01, and (5) 16x16s1/01. The production should also include any responsive information concerning Replacement Parts which resulted from Thompson's (or Precision's) efforts to copy, replicate, or reproduce Cornell-made parts, regardless of whether Cornell has alleged any "intellectual property rights" in any such parts.

Any alleged "confidential" or "trade secret" information may not be withheld by Thompson, and must be produced. However, at Thompson's election, such information may be produced subject to the version of the Confidentiality Agreement attached hereto as Exhibit 3.

### Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), United States District Court, Middle District of Florida, the undersigned has conferred with counsel for defendants in a good faith effort to resolve the issues addressed in this motion, but those efforts have been unsuccessful, necessitating this motion to compel.

### CONCLUSION

For these reasons, and in the interest of justice, Cornell's motion to compel should be granted.

Respectfully Submitted,

/s/ Andrew R. Kruppa

Andrew R. Kruppa (Florida Bar No. 63958)
Trial Counsel
Squire Patton Boggs (US) LLP
200 South Biscayne Boulevard, Suite 4700
Miami, FL 33131
(305) 577-7000 telephone

(305) 577-7001 facsimile
Email: <u>andrew.kruppa@squirepb.com</u>

/s/ Timothy F. Sweeney

Timothy F. Sweeney (Ohio Bar No. 0040027)
PRO HAC VICE ADMISSION
LAW OFFICE OF TIMOTHY F. SWEENEY
820 West Superior Ave., Suite 430
Cleveland, Ohio 44113
(216) 241-5003 telephone
(216) 241-3138 facsimile
Email: <u>tim@timsweeneylaw.com</u>

*Attorneys for Plaintiff Cornell Pump Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 6th day of December 2017, I filed the foregoing CORNELL'S MOTION TO COMPEL DEFENDANT THOMPSON PUMP TO PROVIDE COMPLETE RESPONSES TO DISCOVERY REQUESTS AND TO PRODUCE RESPONSIVE DOCUMENTS electronically through the CM/ECF system, which caused the parties or counsel to be served by electronic means.  The parties may access this filing through the Court's ECF system.

/s/ Timothy F. Sweeney

*One of the Attorneys for Plaintiff, Cornell Pump Company*